# **EXHIBIT A**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NetEffect, Inc.,[1] | ) | Case No. 08-12008 (KJC) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## PLAN OF LIQUIDATION OF NETEFFECT, INC.
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

---

[1] Debtor's EIN: XX-XXX8071; Debtor's former corporate address: 9211 Waterfold Centre Blvd., Austin, TX 78758.

# TABLE OF CONTENTS

Page

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION,  COMPUTATION OF
    TIME AND GOVERNING LAW ........................................................................2

    A.    Rules of Interpretation, Computation of Time and Governing Law .......................2

    B.    Defined Terms ........................................................................3

ARTICLE II ADMINISTRATIVE CLAIMS, PROFESSIONAL FEES AND PRIORITY TAX
    CLAIMS ........................................................................10

    A.    Introduction ........................................................................10

    B.    Administrative Claims (Other Than Professional Fee Claims)............................10

    C.    Professional Fee Claims ........................................................................11

    D.    Priority Tax Claims ........................................................................11

ARTICLE III CLASSIFICATION AND TREATMENT OF  CLASSIFIED CLAIMS AND
    EQUITY INTERESTS ........................................................................12

    A.    Summary........................................................................12

    B.    Classification and Treatment of Claims Against the Debtor ..................................12

        1.  Class 1 – Priority Claims ........................................................................12

        2.  Class 2 - Investor Secured Claim ..................................................................13

        3.  Class 3 – Other Secured Claims ........................................................................13

        4.  Class 4 – General Unsecured Claims ..............................................................13

        5.  Class 5 – Equity Interests ........................................................................14

ARTICLE IV ACCEPTANCE OR REJECTION OF THIS PLAN................................................14

    A.    Voting Classes ........................................................................14

    B.    Acceptance by Impaired Classes ........................................................................14

    C.    Presumed Acceptance/Rejection of Plan................................................................14

    D.    Nonconsensual Confirmation ........................................................................14

    E.    How to Vote........................................................................15

ARTICLE V EFFECT OF CONSUMMATION........................................................................15

    A.    Vesting of Cash and Assets in the Liquidating Debtor .........................................15

    B.    Authority to Effectuate Plan ........................................................................16

    C.    Binding Effect........................................................................16

    D.    Power and Authority of Responsible Officer .......................................................16

    E.    Terms of Existing Injunctions or Stays ................................................................16

| | | | |
|---|---|---|---|
| F. | | Good Faith | 17 |
| G. | | Issuance of New Common Stock | 17 |
| ARTICLE VI | | PLAN ADMINISTRATION | 17 |
| A. | | Post Confirmation Estate | 17 |
| B. | | The Liquidating Debtor | 17 |
| | 1. | Generally | 17 |
| | 2. | Transfer of Assets | 18 |
| | 3. | Responsibilities and Authority of the Liquidating Debtor | 18 |
| | 4. | Powers of the Liquidating Debtor | 18 |
| | 5. | Compensation of the Responsible Officer | 18 |
| | 6. | Retention and Payment of Professionals | 19 |
| C. | | Exculpation | 19 |
| ARTICLE VII | | IMPLEMENTATION OF THIS PLAN | 19 |
| A. | | Limitation of Liability | 19 |
| B. | | Injunction | 20 |
| C. | | Releases. | 20 |
| D. | | Funding of Plan | 20 |
| ARTICLE VIII | | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 21 |
| A. | | Rejection of Executory Contracts and Unexpired Leases | 21 |
| B. | | Claims Based on Rejection of Executory Contracts or Unexpired Leases | 21 |
| ARTICLE IX | | PROVISIONS GOVERNING DISTRIBUTIONS | 21 |
| A. | | Distributions for Claims Allowed as of the Effective Date | 21 |
| B. | | Distributions; Preservation of Causes of Action | 22 |
| C. | | Manner of Payment | 22 |
| D. | | Transmittal of Distributions to Parties Entitled Thereto | 23 |
| E. | | Disputed Claims and Unclaimed Property | 23 |
| F. | | Setoffs | 24 |
| G. | | Saturday, Sunday or Legal Holiday | 24 |
| H. | | Fractional Cents | 24 |
| I. | | Vesting Of Assets | 24 |
| J. | | Corporate Action | 25 |
| K. | | No Release | 25 |

L. De Minimis Payments and Distributions ................................................. 25

M. No Distributions on Late Filed Claims .................................................. 25

N. Withholding Taxes ................................................................................. 25

ARTICLE X PROCEDURES FOR RESOLVING DISPUTED CLAIMS ................................... 26

A. Prosecution of Objections to Claims ..................................................... 26

B. Estimation of Claims ............................................................................. 26

C. Cumulative Remedies ............................................................................. 26

D. Payments and Distributions on Disputed Claims ................................... 27

E. Allowance of Claims and Interests ......................................................... 27

   1. Disallowance of Claims ..................................................................... 27

   2. Allowance of Claims ......................................................................... 27

F. Controversies Concerning Impairment ................................................... 28

ARTICLE XI CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THIS PLAN ................................................................. 28

A. Conditions Precedent to Confirmation .................................................. 28

B. Conditions Precedent to Consummation ................................................ 28

C. Effect of Non-Occurrence of Conditions to Consummation .................. 28

ARTICLE XII RETENTION OF JURISDICTION ............................................................... 28

ARTICLE XIII MISCELLANEOUS PROVISIONS ............................................................. 30

A. Payment of Statutory Fees ..................................................................... 30

B. Modification of Plan .............................................................................. 31

C. Revocation of Plan ................................................................................. 31

D. Successors and Assigns .......................................................................... 31

E. Reservation of Rights ............................................................................. 31

F. Post-Confirmation Effectiveness of Proofs of Claims ........................... 31

G. Term of Injunctions or Stays ................................................................. 31

H. Further Assurances ................................................................................ 32

I. Entire Agreement .................................................................................... 32

J. Retiree Benefits ...................................................................................... 32

K. Failure of Bankruptcy Court to Exercise Jurisdiction ........................... 32

L. Notices .................................................................................................... 32

M. Filing of Additional Documents ............................................................ 33

N. Enforceability ........................................................................................ 33

| O. | Severability | 33 |
| P. | Notice of Default under this Plan | 33 |
| Q. | Investments | 33 |
| R. | Reliance | 33 |

Pursuant to chapter 11, title 11 of the United States Code, 11 U.S.C. §§ 101-1330, NetEffect, Inc., the debtor and debtor in possession in the above-captioned chapter 11 case, hereby respectfully proposes the following Plan of Liquidation.

Reference is made to the Disclosure Statement accompanying this Plan, including the exhibits thereto, for a discussion of the Debtor's history, business, results of operations and properties, and for a summary and analysis of this Plan.

All Holders of Claims and Equity Interests should read the Disclosure Statement and this Plan carefully -- and consult with their counsel and other applicable professionals - before voting to accept or reject this Plan.

## ARTICLE I

### DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

## A.  Rules of Interpretation, Computation of Time and Governing Law

1.     For purposes of this Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and each pronoun, whether stated in the masculine, feminine or neuter gender, shall include the masculine, feminine and the neuter gender; (b) any reference in this Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or exhibit Filed, or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified, all references in this Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan; (e) the words herein and hereto refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form in this Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.     In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

3.     Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

## B.   Defined Terms

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form in this Plan:

1.    "Administrative Claim" means a Claim for costs and expenses of administration under section 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor; (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under section 330(a) or 331 of the Bankruptcy Code; (c) all fees and charges assessed against the Estate under 28 U.S.C. §§ 1911-1930; and (d) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court.

2.    "Administrative Claims Bar Date" means (a) November 14, 2008 at 4:00 p.m. prevailing Eastern Time, the date set by the Bankruptcy Court as the last day for filing all requests for payment of Administrative Claims incurred or accruing on or before October 15, 2008, other than those Administrative Claims expressly excluded therefrom pursuant to prior order of the Bankruptcy Court, or (b) such other date set by the Court in respect of some specifically identified group of Administrative Claims.

3.    "Administrative Claims/Priority Claims Account" means an account or sub-account to be established and administered by the Liquidating Debtor containing funds deposited from the Debtor's Cash on hand on the Effective Date in an amount equal to the aggregate amount of asserted and unpaid Administrative Claims and Priority Claims incurred on or before the Effective Date (whether or not subject to dispute, but other than Administrative Claims and Priority Claims that are disallowed on or before the Effective Date pursuant to a Final Order of the Bankruptcy Court) other than Professional Fee Claims.

4.    "Allowed Claim" means a Claim that has been Allowed.

5.    "Allowed" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtor in its Schedules as other than disputed, contingent or unliquidated which has not been superseded by a filed proof of claim and as to which the Debtor or any other party in interest has not Filed an objection; (b) a Claim that has been allowed by a Final Order; (c) a Claim that is allowed: (i) in any stipulation of amount and nature of Claim executed by the Debtor prior to the Effective Date and approved by the Bankruptcy Court; (ii) in any stipulation of amount and nature of Claim executed by the Liquidating Debtor, as the case may be, on or after the Effective Date and, to the extent necessary, approved by the Bankruptcy Court; or (iii) in any contract, instrument, indenture or other agreement entered into or assumed by the Debtor in connection with and in accordance with this Plan; (d) a Claim relating to a rejected executory contract or unexpired lease that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order, in either case only if a proof of Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law; or (e) a Claim that is allowed pursuant to the terms of this Plan.

6.  "APA" means that certain Asset Purchase Agreement dated as of August 27, 2008, as amended, by and among the Debtor and Purchaser.

7.  "Assets" means any and all of the respective real or personal property of any nature of the Debtor, including, without limitation, any leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, Cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, claims, Causes of Action and any other general intangibles of the Debtor, of any nature whatsoever, including, without limitation, the property of the estate pursuant to section 541 of the Bankruptcy Code.

8.  "Avoidance Actions" mean all claims and causes of action which the Debtor has or had the power to assert pursuant to any or all of sections 510, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

9.  "Ballot Date" means the date stated in the Voting Instructions by which all Ballots must be received, which date shall be April 27, 2009 at 4:00 p.m.

10. "Ballots" mean the ballots upon which Holders of Impaired Claims shall indicate their acceptance or rejection of this Plan in accordance with this Plan and the Voting Instructions.

11. "Bankruptcy Code" means title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

12. "Bankruptcy Court" means the United States District Court for the District of Delaware, having jurisdiction over this Chapter 11 Case and, to the extent of any reference made pursuant to section 157 of title 28 of the United States Code and/or the General Order of such District Court pursuant to section 151 of title 28 of the United States Code, the bankruptcy unit of such District Court.

13. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075 and the General and Local Rules of the Bankruptcy Court.

14. "Bar Date" means November 14, 2008, the date set by the Bankruptcy Court as the last day for filing a non-governmental proof of a claim arising prior to the Petition Date against the Debtor in this Chapter 11 Case, other than those Claims expressly excluded therefrom pursuant to prior order of the Bankruptcy Court.

15. "Business Day" means any day, other than a Saturday, Sunday or legal holiday (as defined in Bankruptcy Rule 9006(a)).

16. "Cash" means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments and legal tender of the United States of America or instrumentalities thereof.

17. "Causes of Action" means any claim or cause of action of the Debtor, including, without limitation, (a) any Preserved Avoidance Action that is or may be pending on the Effective Date or instituted by the Liquidating Debtor, after the Effective Date against any Entity, and (b) any objections to any Claims.

18. "Chapter 11 Case" means the case commenced under chapter 11 of the Bankruptcy Code by the Debtor on the Petition Date, styled *In re NetEffect, Inc.*, Case No. 08-12008 (KJC), currently pending before the Bankruptcy Court.

19. "Claim" means a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor, including, but not limited to: (a) any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

20. "Class" means a category of Holders of Claims or Equity Interests as set forth in Article III of this Plan.

21. "Confirmation Date" means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

22. "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

23. "Confirmation" means the entry of the Confirmation Order, subject to all conditions specified in Article XI of this Plan having been (a) satisfied or (b) waived pursuant to Article XI of this Plan.

24. "Consummation" or "Consummate" means the occurrence of the Effective Date.

25. "Contingent Claim" means a Claim that has accrued but nonetheless remains dependent on the occurrence of a future event that may never occur.

26. "Creditor" means any Holder of a Claim against the Debtor that arose on or prior to the Petition Date.

27. "Creditor Distributable Assets" means available Cash for distribution to Holders of Allowed Unsecured Claims, *plus* Causes of Actions, net of the expenses of administration, including, without limitation, the fees and expenses of the Liquidating Debtor.

28. "Creditor Fund" means the account or sub-account to be established by the Liquidating Debtor to hold the net Creditor Distributable Assets for Distribution to Holders of Allowed Unsecured Claims.

29. "Debtor in Possession" means NetEffect, Inc., as the debtor in possession in this Chapter 11 Case pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

30. "Debtor" means NetEffect, Inc.

31. "Disclosure Statement" means the Debtor's Disclosure Statement dated January __, 2009, describing this Plan, that was prepared and distributed in accordance with the Bankruptcy Code and Bankruptcy Rules and other applicable law.

32. "Disputed" means, with respect to any Claim or Equity Interest, any Claim or Equity Interest: (a) that is listed on the Schedules as unliquidated, disputed or contingent; (b) as to which the Debtor, the Liquidating Debtor, or any other party in interest have interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or that is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or (c) unless otherwise indicated in this Plan, as to which the period within which to object to such Claim has not yet expired.

33. "Distribution Dates" means collectively the Initial Distribution Date, any Subsequent Distribution Date and the Final Distribution Date.

34. "Distribution" means any consideration to be distributed to any Entity under Article IX of this Plan.

35. "Effective Date" means the date selected by the Debtor which is a Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect, and (b) all conditions specified in Section XI. of this Plan have been satisfied unless waived by the Debtor.

36. "Entity" means an entity as defined in section 101(15) of the Bankruptcy Code.

37. "Equity Interest" means any equity interest in the Debtor, including, but not limited to, all issued, unissued, authorized or outstanding shares or stock, together with any warrants, options or contract rights to purchase or acquire such interests at any time.

38. "Estate" means the Estate of the Debtor in this Chapter 11 Case, created pursuant to section 541 of the Bankruptcy Code upon the commencement of this Chapter 11 Case.

39. "File" or "Filed" means file or filed with the Bankruptcy Court or its authorized designee in this Chapter 11 Case.

40. "Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

41. "Final Distribution Date" means the date of the last payment to Holders of Allowed Claims in accordance with the provisions of this Plan.

42. "Final Order" means an order or judgment of a court of competent jurisdiction, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek *certiorari* has expired and no appeal or petition for *certiorari* is pending.

43. "Financing Order" means that certain *Final Order (1) Approving Post-Petition Financing, (2) Granting Liens and Providing Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 363 and 364, (3) Modifying Automatic Stay Purusant to 11 U.S.C. § 362, and (4) Scheduling a Final Hearing*, entered by the Bankruptcy Court on September 19, 2008 Docket No. 141.

44. "General Unsecured Claim" means any Unsecured Claim against the Debtor.

45. "Holder" means an Entity holding a Claim or Equity Interest.

46. "Impaired" means, with respect to a Claim or Class of Claims, a Claim or Class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

47. "Initial Distribution Date" means the Effective Date, or as soon as practicable thereafter.

48. "Insider" means an insider of the Debtor, as defined in section 101(31) of the Bankruptcy Code.

49. "Interim Fee Order" means that certain *Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Expense Reimbursement of Professionals and Committee Members* [Docket No. 114].

50. "Investor Secured Claims" means the allowed amount of the Secured Claims asserted by Granite Ventures, LLC, as collateral agent for various purchasers of $245,000 of the Debtor's notes issued pursuant to the certain *Amendment No. 1 to Note Purchase Agreement*, dated as of March 27, 2008.

51. "Investor Secured Claims Account" means an account or sub-account to be established by the Liquidating Debtor to hold the required amounts for distribution on account of Allowed Investor Secured Claims.

52. "Lien" means any charge against or interest in property (including, but not limited to, any mortgage, lien, pledge, charge, security interest, encumbrance or other security device of any kind) to secure payment of a debt or performance of an obligation.

53. "Liquidating Debtor means the Debtor on and after the Effective Date.

54. "New Common Stock" means the new common stock of the Liquidating Debtor that will be deemed issued on or as soon as practicable after the Effective Date.

55. "Petition Date" means August 27, 2008, the date on which the Debtor filed its petition for relief commencing this Chapter 11 Case.

56. "Plan Objection Deadline" means the deadline established by the Bankruptcy Court for filing and serving objections to Confirmation of this Plan.

57. "Investor Secured Claims Account" means the account to be established by the Liquidating Debtor containing Cash in an amount equal to the assessed amount of the Investor Secured Claims.

58. "Plan" means this Chapter 11 Plan of Liquidation, including, without limitation, any exhibits and schedules hereto, either in its present form or as the same may be amended, modified or supplemented from time to time in accordance with the terms and provisions hereof.

59. "Preserved Avoidance Actions" means all Avoidance Actions of the Liquidating Debtor.

60. "Priority Claim" means any Claim, other than an Administrative Claim or a Priority Tax Claim, to the extent entitled to priority under section 507(a) of the Bankruptcy Code.

61. "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

62. "Pro Rata" means proportionately so that, with respect to a Claim, the ratio of (a) (i) the amount of property distributed on account of a particular Claim to (ii) the Allowed amount of the Claim, is the same as the ratio of (b) (i) the amount of property distributed on account of all Unsecured Claims to (ii) the amount of all Allowed Unsecured Claims in that Class.

63. "Professional Fee Claim" means those fees and expenses claimed by Professionals pursuant to sections 330, 331 and/or 503 of the Bankruptcy Code, and accrued and unpaid as of the Effective Date.

64. "Professional Fees Account" means an account or sub-account free and clear of liens, claims and interests other than Professional Fee Claims to be established and administered by the Liquidating Debtor, containing funds deposited from the Debtor's Cash on hand on the Effective Date in an amount equal to (i) the aggregate estimated amount of unpaid Professional Fee Claims (whether or not subject to dispute, but other than Professional Fee Claims that are disallowed on or before the Effective Date pursuant to a Final Order of the Bankruptcy Court) incurred on or before the Effective Date plus (ii) the Liquidating Debtor Professionals Fund.

65. "Professional" means an Entity (a) employed pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

66. "Proof of Claim" means a proof of claim Filed pursuant to section 501 of the Bankruptcy Code and/or any order of the Bankruptcy Court, together with supporting documents.

67. "Purchaser" means Intel-NE, Inc.

68. "Reserve Amount" means the amount of Creditor Distributable Assets reserved on behalf of a particular Creditor's Claim.

69. "Reserve Fund" means the segregated account or sub-account(s) established to hold the Reserve Amount.

70. "Responsible Officer" means Robert Senders, who serves as the Debtor's Chief Financial Officer during the Chapter 11 Case, or any duly selected successor.

71. "Sale Closing Date" means October 14, 2008.

72. "Sale Order" means that certain *Order Under 11 U.S.C. §§ 105(a), 363 and 365 and Fed. R. Bankr. P. 2002, 6004 and 6006 Authorizing and Approving (A) the Sale of Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases to Successful Bidder(s) at Auction,* entered by the Bankruptcy Court on October 8, 2008 [Docket No. 199].

73. "Schedules" means the schedules of assets and liabilities filed pursuant to section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, and the Debtor's statements of financial affairs filed with the Bankruptcy Court pursuant to section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules.

74. "Secured Claim" means any Claim that is secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, only to the extent of the value, net of any senior Lien, of the Estate's interest in the assets or property securing any such Claim.

75. "Subsequent Distribution Date" means any date after the Initial Distribution Date (a) that is (i) set by the Liquidating Debtor or (ii) otherwise ordered by the Bankruptcy Court, and (b) upon which the Liquidating Debtor makes a Distribution to any Holders of Allowed General Unsecured Claims.

76. "Tax Account" means an account or sub-account to be established and administered by the Liquidating Debtor containing funds deposited from the Debtor's Cash on hand on the Effective Date in an amount equal to the aggregate amount of unpaid Priority Tax Claims (whether or not subject to dispute, but other than Priority Tax Claims that are disallowed on or before the Effective Date pursuant to a Final Order of the Bankruptcy Court).

77. "Tax" means any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, *ad valorem,* estimated, severance, stamp, occupation and withholding tax. "Tax" shall include any interest or additions attributable to, imposed on or with respect to such assessments.

78.   "U.S. Trustee" means the Office of the United States Trustee for the District of Delaware.

79.   "Unimpaired Claim" means an unimpaired Claim, within the meaning of section 1124 of the Bankruptcy Code.

80.   "Unsecured Claim" means any Claim against the Debtor or its Estate that is not a Secured Claim, Administrative Claim, Priority Tax Claim or Priority Claim.

81.   "Voting Instructions" means the instructions for voting on this Plan contained in Article VII of the Disclosure Statement and in the Ballots.

82.   "Voting Record Date" means the date as of which the identities of Holders of Claims are set for purposes of determining the Entities entitled to receive and vote on this Plan. Pursuant to Bankruptcy Rules 3017(d) and 3018(a), this date is the date of entry of the Bankruptcy Court's order approving the Disclosure Statement or such other date as the Bankruptcy Court may set.

## ARTICLE II

## ADMINISTRATIVE CLAIMS, PROFESSIONAL FEES AND PRIORITY TAX CLAIMS

### A.   Introduction

Certain types of Claims are not placed into voting Classes; instead they are unclassified. They are not considered Impaired and they do not vote on this Plan because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code. As such, the Debtor has not placed the following Claims in a Class:

### B.   Administrative Claims (Other Than Professional Fee Claims)

With respect to all Administrative Claims (excluding Professional Fee Claims) accrued and not paid as of the Effective Date, the Liquidating Debtor shall retain on the Effective Date, and deposit into the Administrative Claims/Priority Claims Account, an amount equal to the aggregate amount of asserted Administrative Claims (whether or not subject to dispute, but other than Administrative Claims that are disallowed on or before the Effective Date pursuant to a Final Order of the Bankruptcy Court). The Liquidating Debtor shall pay each Holder of an Allowed Administrative Claim in full in the amount of its Allowed Claim from the Administrative Claims/Priority Claims Account, without interest, in Cash promptly after the date on which the Claim becomes an Allowed Claim, or on such other date and upon such other terms as may be agreed upon in writing by that Holder and the Liquidating Debtor.

Notwithstanding any provision in this Plan regarding payment of Administrative Claims to the contrary, and without waiver of any argument that such Claim is already time-barred by prior orders of the Bankruptcy Court, all Administrative Claims required to be Filed and not Filed by the Administrative Claim Bar Date shall be deemed disallowed. As provided herein, the Administrative Claims/Priority Claims Account will include funds sufficient to cover the aggregate asserted amount of all disputed Administrative Claims. Without limiting the

foregoing, all unpaid fees payable under 28 U.S.C. § 1930, shall be paid on or before the Effective Date.

## C.    Professional Fee Claims

The Liquidating Debtor shall pay Professionals from the Professional Fees Account all of their respective accrued and Allowed fees and reimbursement of expenses arising prior to the Effective Date plus post-Effective Date fees.

The Bankruptcy Court must rule on and allow all Professional Fee Claims before the fees will be owed and paid. For all Professional Fee Claims, except Bankruptcy Clerk's Office fees and U.S. Trustee's fees, the Professional in question must file and serve a properly noticed final fee application and the Bankruptcy Court must rule on the application. Only the amount of fees and expenses Allowed by the Bankruptcy Court will be owed and required to be paid under this Plan.

The Liquidating Debtor may retain and compensate professionals for services rendered following the Effective Date without order of the Bankruptcy Court.

Professionals requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered prior to the Effective Date must File and serve, pursuant to the notice provisions of the Interim Fee Order, an application for final allowance of compensation and reimbursement of expenses no later than sixty (60) days after the Effective Date. All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Bankruptcy Court. Holders of Administrative Claims (including, without limitation, Professionals) requesting compensation or reimbursement of such expenses pursuant to sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code that do not file such requests by the applicable deadline provided for herein shall be forever barred from asserting such claims against the Debtor, the Estate, the Liquidating Debtor, or their successors, their assigns or their property. Any objection to Professional Fee Claims shall be filed on or before the objection deadline specified in the application for final compensation or order of the Bankruptcy Court.

## D.    Priority Tax Claims

On the later to occur of (i) the Effective Date, or as soon as practicable thereafter, or (ii) the date on which such Claim shall become an Allowed Claim, the Liquidating Debtor shall pay to each Holder of an Allowed Priority Tax Claim such Allowed Priority Tax Claim, without interest, from the funds in the Tax Account.

# ARTICLE III

## CLASSIFICATION AND TREATMENT OF
## CLASSIFIED CLAIMS AND EQUITY INTERESTS

### A.  Summary

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, Confirmation and Distribution pursuant to this Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

### B.  Classification and Treatment of Claims Against the Debtor

The classification of Claims and Equity Interests against the Debtor pursuant to this Plan is as follows:

| Class | Status | Voting Rights |
|---|---|---|
| Class 1 – Priority Claims | Impaired | Entitled to Vote |
| Class 2 – Investor Secured Claim | Impaired | Entitled to Vote |
| Class 3 – Other Secured Claims | Impaired | Entitled to Vote |
| Class 4—General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5—Equity Interests in the Debtor | Impaired | Not Entitled to Vote |

#### 1.  Class 1 – Priority Claims

a.  Classification: Class 1 consists of Priority Claims against the Debtor.

b.  Treatment: The Liquidating Debtor shall pay the Allowed amount of each Class 1 Priority Claim from the Administrative Claims/Priority Claims Account to each Entity holding a Class 1 Priority Claim promptly following the later of (a) the Effective Date, or as soon as practicable thereafter, and (b) the date such Class 1 Priority Claim becomes an Allowed Claim (or as otherwise permitted by law). The Liquidating Debtor shall pay each Holder of a Class 1 Priority Claim in Cash in full in respect of such Allowed Claim without interest accruing from the Petition Date, or on such less favorable terms as may be agreed to in writing by such Holder.

c.  Voting: Class 1 is an Impaired Class and Holders of Class 1 Claims are entitled to vote on this Plan.

### 2. Class 2 - Investor Secured Claim

a. Classification: Class 2 consists of the Investor Secured Claims.

b. Treatment: The outstanding amounts due on the Investor Secured Claims shall be paid from the Investor Secured Claims Account in full, inclusive of interest payable at the federal judgment rate as of the Petition Date, on the Effective Date, or as soon as practicable thereafter, unless otherwise agreed by the Holders of the Investor Secured Claims and the Liquidating Debtor.

c. Voting: Class 2 is an Impaired Class and Holders of Class 2 Claims are entitled to vote on this Plan.

### 3. Class 3 – Other Secured Claims

a. Classification: Class 3 consists of the Other Secured Claims (if any), against the Debtor.

b. Treatment: At the sole option of the Liquidating Debtor, each Holder of an Allowed Class 3 Other Secured Claim, if any, shall receive one of the following treatments: (i) the Holder of such Claim shall retain its Lien on its collateral until such collateral is sold, and the proceeds of such sale, less costs and expenses of disposing of such collateral shall be paid to such Holder in full satisfaction, release, and discharge of such Allowed Class 3 Secured Claim; (ii) on or as soon as practicable after the later of (a) the Effective Date, or (b) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim, as otherwise agreed between the Holder of such Claim and the Liquidating Debtor, the Holder of such Other Secured Claim will receive a Cash payment equal to the amount of its Allowed Secured Claim in full satisfaction, release, and discharge of such Secured Claim; or (iii) the collateral securing the Creditor's Secured Claim shall be abandoned to such Creditor, in full satisfaction, release, and discharge of such Other Secured Claim. Each Other Secured Claim, if any, shall be considered a separate sub-class for purposes of this Plan.

c. Voting: Class 3 is an Impaired Class and Holders of Class 3 Claims are entitled to vote on this Plan.

### 4. Class 4 – General Unsecured Claims

a. Classification: Class 4 consists of General Unsecured Claims against the Debtor.

b. Treatment: Each Holder of an Allowed General Unsecured Claim shall receive a Pro Rata share of the Creditor Distributable Assets, as determined by the Liquidating Debtor.

c. Voting: Class 4 is an Impaired Class and Holders of Class 4 Claims are entitled to vote on this Plan.

**5.    Class 5 – Equity Interests**

a.    Classification:   Class 5 consists of all Equity Interests in the Debtor.

b.    Treatment:   There shall be no Distributions made on account of Class 5 Equity Interests.  Upon the occurrence of the Effective Date, the Equity Interests will be canceled and will cease to exist.

c.    Voting:   Holders of Class 5 Equity Interests will receive no Distributions under this Plan and Class 5 is therefore deemed to have rejected this Plan.  Accordingly, Class 5 Equity Interests are not entitled to vote.

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THIS PLAN

**A.    Voting Classes**

Each Holder of an Allowed Claim in Classes 1, 2, 3, and 4 is entitled to vote either to accept or to reject this Plan.  Only those votes cast by Holders of Allowed Claims shall be counted in determining whether acceptances have been received sufficient in number and amount to obtain Confirmation.

**B.    Acceptance by Impaired Classes**

An Impaired Class of Claims shall have accepted this Plan if (a) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept this Plan and (b) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept this Plan.

**C.    Presumed Rejection of Plan**

Class 5 shall not receive any distributions under this Plan, is therefore deemed to reject this Plan, and members of Class 5 are not entitled to vote.

**D.    Nonconsensual Confirmation**

Because Class 5 is deemed to reject this Plan by operation of law, the Debtor will request that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code.  Without limiting the foregoing, in the event that any Class of Claims entitled to vote on this Plan fails to accept this Plan as required by section 1129(a) of the Bankruptcy Code, this Plan may be amended in accordance with the provisions of this Plan, and the Debtor reserves the right to seek confirmation of this Plan, as amended, over such rejection (or over any rejection by any other Class of Claims) pursuant to section 1129(b) of the Bankruptcy Code.

## E. How to Vote

A form of Ballot is being provided to Creditors in Classes 1, 2, 3, and 4 by which Creditors in such Classes may vote their acceptance or rejection of this Plan. The Ballot for voting on this Plan gives Creditors one important choice to make with respect to this Plan – the decision to vote *for* or *against* this Plan. To vote on this Plan, please complete the Ballot, as indicated thereon, (1) by indicating on the enclosed Ballot that (a) you accept this Plan, or (b) reject this Plan, and (2) by signing your name and mailing the Ballot in the envelope provided for this purpose. Epiq Bankruptcy Solutions, LLC, as the claims and balloting agent, will count the Ballots.

IN ORDER TO BE COUNTED, BALLOTS MUST BE COMPLETED, SIGNED AND RECEIVED NO LATER THAN 4:00 P.M. EASTERN TIME ON APRIL 27, 2009 AT THE FOLLOWING ADDRESS:

NetEffect, Inc., Ballot Processing,
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5075
New York, NY 10150-5075

- OR -

NetEffect, Inc., Ballot Processing,
c/o Epiq Bankruptcy Solutions, LLC
757 Third Avenue, 3rd Floor
New York, NY 10017

IF YOUR BALLOT IS NOT PROPERLY COMPLETED, SIGNED AND RECEIVED AS DESCRIBED, IT WILL NOT BE COUNTED. IF YOUR BALLOT IS DAMAGED OR LOST, YOU MAY REQUEST A REPLACEMENT BY ADDRESSING A WRITTEN REQUEST TO THE ADDRESS SHOWN ABOVE. FACSIMILE OR ELECTRONICALLY SUBMITTED BALLOTS WILL NOT BE COUNTED.

## ARTICLE V

## EFFECT OF CONSUMMATION

## A. Vesting of Cash and Assets in the Liquidating Debtor

On the Effective Date, an amount necessary to adequately fund the Tax Account, the Creditor Fund, the Investor Secured Claim Account, the Professionals Fees Account, and the Administrative Claims/Priority Claims Account shall be transferred to and vest in the Liquidating Debtor, free of any Claims, Liens and Equity Interests, to be managed and used by the Liquidating Debtor for the sole purposes of carrying out this Plan and effectuating the Distributions provided for in this Plan.

## B.    Authority to Effectuate Plan

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided under this Plan shall be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Confirmation Order shall act as an order modifying the Debtor's by-laws such that the provisions of this Plan can be effectuated. The Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve Consummation and carry out this Plan and to effectuate the Distributions provided for thereunder.

## C.    Binding Effect

Except as otherwise expressly provided in this Plan, on and after the Effective Date, this Plan and all exhibits thereto shall bind the Liquidating Debtor, and all Holders of Claims and Equity Interests.

## D.    Power and Authority of Responsible Officer

From and after the Effective Date, the Liquidating Debtor will be managed and governed by the Responsible Officer, who shall act as the representative of the Liquidating Debtor. The Responsible Officer may hire and use consultants and/or lower priced employees of his firm (if applicable) as he deems appropriate. Compensation and reimbursement of the Responsible Officer, and any lower priced consultants and/or employees from his firm, shall be payable from the Creditor Fund. Confirmation of this Plan shall constitute the appointment of the Responsible Officer, by the Bankruptcy Court, as the representative of the Liquidating Debtor to exercise the rights, power and authority of the Liquidating Debtor under applicable provisions of this Plan and bankruptcy and non-bankruptcy law. On the Effective Date, the Responsible Officer will be deemed to have retained the Debtor's professionals on behalf of the Liquidating Debtor under the arrangements existing on the Effective Date, without any need for new retention agreements or further orders of the Bankruptcy Court. The Responsible Officer shall be authorized to execute a certificate of dissolution for the Liquidating Debtor pursuant to applicable non-bankruptcy law, at such time as the Liquidating Debtor has fully wound up its affairs in accordance with applicable law pursuant to the provisions of this Plan. The Responsible Officer shall serve until the Liquidating Debtor is dissolved and a Final Decree is entered closing the Chapter 11 Case, unless earlier removed by the Bankruptcy Court for cause shown, after notice and a hearing. Upon the removal of the Responsible Officer for cause, or if the sitting Responsible Officer becomes unable, unavailable or unwilling to continue to serve, the Bankruptcy Court will appoint a replacement *sua sponte* or upon the request of any party in interest. The Responsible Officer shall be responsible for ensuring that the Liquidating Debtor complies with its obligation to pay statutory fees under 28 U.S.C. § 1930(a)(6), and the Responsible Officer shall file all post-confirmation reports required by the Bankruptcy Rules, the Bankruptcy Court, the Local Bankruptcy Rules, or any applicable Guidelines of the United States Trustee.

## E.    Terms of Existing Injunctions or Stays

Unless otherwise provided herein, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105, 362 or 525 of the Bankruptcy Code, or otherwise, and in existence

on the Confirmation Date, shall remain in full force and effect until the Effective Date. The Plan and Confirmation Order will permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively or otherwise, of any Claims, Equity Interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released or enjoined pursuant to this Plan.

**F.    Good Faith**

Confirmation of this Plan shall constitute a finding that: (i) this Plan has been proposed in good faith and in compliance with applicable provisions of the Bankruptcy Code; and (ii) the solicitation of acceptances or rejections of this Plan by all Entities has been in good faith and in compliance with applicable provisions of the Bankruptcy Code.

**G.    Issuance of New Common Stock**

On or as soon as practicable after the Effective Date the New Common Stock shall be deemed issued by the Liquidating Debtor to the Responsible Officer to be held on behalf of and as the representative of all Holders of Allowed General Unsecured Claims. Each Holder of an Allowed Claim shall be deemed to hold an undivided beneficial Pro Rata interest in the New Common Stock.

**ARTICLE VI**

**PLAN ADMINISTRATION**

**A.    Post Confirmation Estate**

On the Effective Date, the Liquidating Debtor shall create the Creditor Fund (from which payment of all Allowed General Unsecured Claims shall be paid), the Tax Account, the Investor Secured Claims Account, the Professionals Fees Account and the Administrative Claims/Priority Claims Account.

**B.    The Liquidating Debtor**

     **1.    Generally**

The Liquidating Debtor shall be deemed to have been appointed as the Estate's representative by the Bankruptcy Court pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

The powers, authority, responsibilities and duties of the Liquidating Debtor shall be governed by this Plan and the Confirmation Order. The Liquidating Debtor may execute, deliver, file or record such documents, instruments, releases and other agreements, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

## 2. Transfer of Assets

The creation of the Creditor Fund by the Liquidating Debtor will be made for the benefit of the beneficiaries thereof, but only to the extent such beneficiaries are entitled to Distributions under this Plan.

## 3. Responsibilities and Authority of the Liquidating Debtor

The responsibilities and authority of the Liquidating Debtor shall include (a) facilitating the prosecution or settlement of objections to, and estimations of, General Unsecured Claims; (b) calculating and implementing all distributions from the Creditor Fund in accordance with this Plan; (c) filing all required tax returns and paying taxes and all other obligations on behalf of the Liquidating Debtor from funds held by the Liquidating Debtor; (d) distributions on Allowed General Unsecured Claims; (e) liquidating the assets and providing for the distribution of the net proceeds thereof in accordance with the provisions of this Plan; (f) retaining and paying at normal and customary rates or contingency fee basis, on a monthly basis, professionals in connection with the Liquidating Debtor's duties; and (g) such other responsibilities as may be vested in the Liquidating Debtor pursuant to this Plan or Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of this Plan.

## 4. Powers of the Liquidating Debtor

The powers of the Liquidating Debtor shall, without any further Bankruptcy Court approval, include, *inter alia*, and without limitation, (a) the power to invest funds in, and withdraw, make distributions and pay taxes and other obligations owed by, the Liquidating Debtor in accordance with this Plan, (b) the power to engage and compensate, without prior Bankruptcy Court order or approval, employees and professional Entities to assist the Liquidating Debtor with respect to its responsibilities, (c) the power to prosecute, compromise and settle General Unsecured Claims and Preserved Avoidance Actions without prior Bankruptcy Court approval, and (d) such other powers as may be vested in or assumed by the Liquidating Debtor pursuant to this Plan, Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of this Plan. Except as expressly set forth herein, the Liquidating Debtor shall have absolute discretion to pursue, or not to pursue, any and all claims, rights, and/or Preserved Avoidance Actions, as it determines to be in the best interests of creditors, and shall have no liability for the outcome of its decisions, other than those decisions constituting gross negligence or willful misconduct. The Liquidating Debtor may incur any reasonable and necessary expenses in liquidating and converting the Creditor Fund to Cash.

## 5. Compensation of the Responsible Officer

The Responsible Officer shall serve on (i) the terms, conditions and rights set forth in this Plan and Confirmation Order, or (ii) such terms, conditions and rights as otherwise agreed to by the Liquidating Debtor or the Debtor. The Responsible Officer shall not be required to file a fee application to receive compensation.

### 6. **Retention and Payment of Professionals**

The Responsible Officer of the Liquidating Debtor shall have the right to retain the services of attorneys, accountants, and other professionals and agents, in the discretion of the Liquidating Debtor, to assist and advise the Responsible Officer in the performance of his/her duties, and to compensate such professionals from the Liquidating Debtor's assets. The fees (including filing fees), if any, of the Liquidating Debtor may be paid from the Creditor Fund otherwise distributable to the Holders of Allowed General Unsecured Claims.

### C. **Exculpation**

No Holder of a Claim or any other party-in-interest will have, or otherwise pursue, any Claim or cause of action against the Liquidating Debtor, the Responsible Officer, or the employees or professionals thereof (solely in the performance of their duties as provided herein), for making payments in accordance with this Plan or for implementing the provisions of this Plan, except for any acts or omissions to act that are the result of willful misconduct, or gross negligence.

### ARTICLE VII
### IMPLEMENTATION OF THIS PLAN

### A. **Limitation of Liability**

Except as expressly set forth in this Plan, on and after the Confirmation Date, neither the Debtor, nor its successors or assigns, including the Liquidating Debtor, nor any of their respective past and present officers, directors, employees, members, agents, representatives, shareholders, attorneys, accountants, financial advisors, investment bankers, lenders, consultants, experts, and Professionals, and agents for the foregoing, shall have or incur any liability for, and are expressly exculpated and released from, any claim (as defined in section 101(5) of the Bankruptcy Code) or any past or present actions taken or omitted to be taken under or in connection with, related to, effecting, or arising out of the following: (i) the Debtor's and/or the Liquidating Debtor's operations after the Petition Date; (ii) this Chapter 11 Case; (iii) the postpetition administration of the Debtor's Assets; (iv) the pursuit of Confirmation; (v) the formulation, preparation, dissemination, implementation, administration, Confirmation, or Consummation of this Plan and the Disclosure Statement; (vi) the sale and liquidation of the Assets (including the prosecution of Causes of Action), or the property to be distributed under this Plan; (vii) any other act taken or omitted to be taken in connection with the Debtor's business after the Petition Date; or (viii) any contract, instrument, release, or other agreement entered into or created in connection with the foregoing; except only for actions or omissions to act to the extent determined by a court of competent jurisdiction (in a Final Order) to be by reason of such party's gross negligence, willful misconduct, or fraud, and in all respects, such party shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan; it being expressly understood that any act or omission with the approval of the Bankruptcy Court will be conclusively deemed not to constitute gross negligence, willful misconduct, or fraud unless the approval of the Bankruptcy Court was obtained by fraud or misrepresentation.

## B.    Injunction

Except as otherwise expressly provided in this Plan, all Entities that have held, hold or may hold Claims against or Equity Interests in the Debtor, or the Liquidating Debtor, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against the Debtor, its Estate, the Liquidating Debtor, the Professionals, or any of their property on account of any Claims or causes of action arising from events prior to the Effective Date, including, without limitation:  (i) commencing or continuing in any manner any action or other proceeding of any kind; (ii) enforcing, attaching, collecting or recovering by any manner or in any place or means any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind; and (iv) asserting any right of setoff against any obligation, debt or liability due to the Debtor. Except as expressly provided herein, the Debtor and the Liquidating Debtor expressly reserve all rights and defenses that the Debtor may have (including, without limitation, the rights of subrogation and recoupment) with respect to any obligation, debt or liability allegedly due to any Entity.

By accepting Distributions pursuant to this Plan, each Holder of an Allowed Claim receiving Distributions pursuant to this Plan will be deemed to have specifically consented to the injunctions set forth herein.

## C.    Releases

Each person or entity voting to accept this Plan, for itself and its respective successors, assigns, transferees, officers and directors, agents, members, financial advisors, attorneys, employees, partners, affiliates, representatives, in each case in their capacity as such, shall, by virtue of its vote, be deemed to have released any and all claims and causes of action against the Debtor or the Liquidating Debtor, and their respective officers and directors acting in such capacities as of the Petition Date, managers, employees, agents, advisors, accountants, attorneys and representatives, and their respective property, arising prior to the Effective Date.

Each party to which this section of this Plan applies shall be deemed to have granted the releases set forth herein, notwithstanding that it may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such party expressly waives any and all rights that it may have under any statute or common law principle, including section 1542 of the California Civil Code, which would limit the effect of such releases to those Claims or causes of action actually known or suspected to exist at the time of Confirmation. Section 1542 of the California Civil Code generally provides as follows: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

## D.    No Discharge

Nothing contained in this Plan shall be deemed to constitute a discharge of the Debtor under Bankruptcy Code section 1141(d)(3).

## E.      Funding of Plan

The source of funds to achieve Consummation and to carry out this Plan shall be the Debtor's Cash on hand and any Causes of Action, which shall be distributed in accordance with this Plan.

## ARTICLE VIII

## TREATMENT OF EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES

### A.      Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, except for any executory contracts or unexpired leases listed on **Exhibit A** hereto or executory contracts or unexpired leases that were previously assumed or rejected by order of the Bankruptcy Court, or are the subject of a pending motion to assume or reject, pursuant to section 365 of the Bankruptcy Code, each executory contract and unexpired lease entered into by the Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to section 365 of the Bankruptcy Code. The Confirmation Order shall constitute an Order of the Bankruptcy Court approving such rejections pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. The non-Debtor parties to any rejected personal property leases shall be responsible for taking all steps necessary to retrieve the personal property that is the subject of such executory contracts and leases.

### B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases

All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the earlier of the date of entry of the Effective Date or an order of the Bankruptcy Court approving such rejection. Any Claims arising from the rejection of an executory contract or unexpired lease not Filed within such times will be forever barred from assertion against the Debtor, the Estate and its property, and the Liquidating Debtor, unless otherwise ordered by the Bankruptcy Court or provided in this Plan. All such Claims for which proofs of claim are timely and properly Filed and ultimately Allowed will be treated as General Unsecured Claims subject to the provisions of Article III of this Plan.

## ARTICLE IX

## PROVISIONS GOVERNING DISTRIBUTIONS

### A.      Distributions for Claims Allowed as of the Effective Date

Except as otherwise provided in this Plan or as ordered by the Bankruptcy Court, Distributions on account of Claims that are Allowed as of the Effective Date and are entitled to receive Distributions under this Plan shall be made by the Liquidating Debtor on the Initial Distribution Date. Distributions on account of Claims that become Allowed after the Effective

Date shall be made on the next Subsequent Distribution Date or Final Distribution Date, as the case may be, in each case without interest.

## B.     Distributions; Preservation of Causes of Action

The Liquidating Debtor will make all Distributions provided for under this Plan. The Liquidating Debtor shall not be required to post any bond.

Unless a Preserved Avoidance Action or Cause of Action against a Creditor or other Entity is expressly waived, relinquished, released, compromised or settled in this Plan or in a Final Order, all rights with respect to such Preserved Avoidance Action or Cause of Action are reserved to the Liquidating Debtor, and the Liquidating Debtor may pursue such Preserved Avoidance Action or Cause of Action prior to, on, or after the Effective Date.

The Liquidating Debtor may pursue or decline to pursue any Causes of Action or Preserved Avoidance Actions for prosecution, as appropriate, in the business judgment of the Liquidating Debtor, subject to the provisions of this Plan. The Liquidating Debtor may settle, release, sell, assign, otherwise transfer or compromise such Cause of Action or Preserved Avoidance Action in the business judgment of the Liquidating Debtor, subject to the provisions of this Plan, without Bankruptcy Court approval.

Upon the completion of liquidation of the Creditor Distributable Assets and disbursement of the entire proceeds thereof, the Liquidating Debtor shall file a report with the Bankruptcy Court and request the entry of a Final Decree closing the Chapter 11 Case.

## C.     Manner of Payment

Any payment of Cash made under this Plan may be made either by check drawn on a domestic bank, by wire transfer, or by automated clearing house transfer from a domestic bank, at the option of the Liquidating Debtor.

Under section 1146(c) of the Bankruptcy Code, the making or delivery of an instrument of transfer under a plan may not be taxed under any law imposing a stamp tax or similar tax. Pursuant thereto and because the Debtor is liquidating its Assets hereunder, entry of the Confirmation Order shall be a determination that no stamp tax, transfer tax or similar tax may be imposed on any sale of property by the Debtor and the Liquidating Debtor.

The Liquidating Debtor, in making Distributions under this Plan, shall comply with applicable tax withholding and reporting requirements imposed by any governmental unit, and all Distributions made pursuant to this Plan shall be subject to such withholding and reporting requirements. The Liquidating Debtor may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides the Liquidating Debtor with the necessary information to comply with any reporting and withholding requirements of any governmental unit. Any funds so withheld will then be paid by the Liquidating Debtor to the appropriate authority. If the Holder of an Allowed Claim fails to provide to the Liquidating Debtor the information necessary to comply with any reporting and withholding requirements of any governmental unit within thirty (30) days from the date of first notification by the Liquidating Debtor to the Holder of such Allowed Claim about the need for such information or

for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable Distribution in accordance with Section IX(E) below.

## D. Transmittal of Distributions to Parties Entitled Thereto

All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid. Except as otherwise agreed with the Holder of an Allowed Claim in respect thereof or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail, upon compliance by the Holder with the provisions of this Plan, to (a) the latest mailing address Filed for the Holder of an Allowed Claim entitled to a Distribution, (b) the latest mailing address Filed for a Holder of a Filed power of attorney designated by the Holder of such Claim to receive Distributions, (c) the latest mailing address Filed for the Holder's transferee as identified in a Filed notice served on the Debtor pursuant to Bankruptcy Rule 3001(e), or (d) if no such mailing address has been Filed, the mailing address reflected on the Schedules or in the Debtor's books and records.

## E. Disputed Claims and Unclaimed Property

Notwithstanding all references in this Plan to Claims that are Allowed, in undertaking the Pro Rata calculations concerning Allowed Claims under this Plan, including the determination of the amount of Distributions due to the Holders of Allowed Claims, each Disputed Claim shall be treated as if it were an Allowed Claim, as appropriate, except that if the Bankruptcy Court estimates the portion of a Disputed Claim to be Allowed or otherwise determines the amount which would constitute a sufficient reserve for a Disputed Claim (which estimations and determinations may be requested by the Liquidating Debtor), such amount as determined by the Bankruptcy Court shall be used as to such Claim.

The Distributions due in respect of Disputed Claims, based on the calculations required by this Plan, shall be reserved for the Holders of the Disputed Claims and deposited into the Reserve Fund.

After an objection to a Disputed Claim is withdrawn or determined by Final Order, the Distributions due on account of any resulting Allowed Claim shall be paid by the Liquidating Debtor from the Reserve Amounts for such Creditor held in the Reserve Funds, together with the interest, if any, actually accrued on the Reserve Amounts. Such payment shall be made on the next Subsequent Distribution Date. No interest shall be due to a Disputed Claim holder based on the delay attendant to determining the allowance of such Claim except as set forth in this subsection.

Should the Distribution on account of any Allowed Claim of such Creditor exceed the Reserve Amount, the shortfall may be paid from available sums, if any, for the next Distribution, provided that, in no event shall the Creditor have recourse to any payments already made to others or to sums reserved by the Liquidating Debtor in connection with the Reserve Funds or for ongoing fees and costs of administering the Debtor's Estate or effectuating this Plan.

After an objection to such a Disputed Claim is sustained in whole or in part by a Final Order, any Reserve Amounts for such Claim held in the respective Reserve Fund in excess of the

Distributions due on account of any resulting Allowed Claim may be removed by the Liquidating Debtor from the respective Reserve Fund and treated as available funds for ongoing costs and fees and Distributions.

At election of the Liquidating Debtor, any property which is unclaimed for ninety (90) days after Distribution thereof by mail to the last known mailing address of the party entitled thereto shall revest in the Liquidating Debtor as available funds for ongoing costs and fees or for distribution to other Creditors. Notwithstanding the foregoing, if any mail sent to a Creditor at the last known mailing address by the Liquidating Debtor is returned without a forwarding address, and the Creditor does not Claim its Distribution within ninety (90) days after it is mailed to the Creditor, the Creditor's Claim shall be deemed stricken from the Creditor list, the Liquidating Debtor shall not be required to issue any checks to such Creditor and, for the purposes of future Distributions, the Creditor's Claim shall be deemed disallowed.

## F.    Setoffs

The Liquidating Debtor may, but shall not be required to, set off against any Claim, and the payments and/or Distribution of other property to be made under this Plan in respect of such Claim, any claims of any nature whatsoever the Debtor may have against the Holder of a Claim, but neither the failure to do so nor the allowance of any Claim under this Plan shall constitute a waiver by the Debtor and/or the Liquidating Debtor of any such claim the Debtor may have against such Holder.

## G.    Saturday, Sunday or Legal Holiday

If any payment, Distribution, or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or Distribution or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

## H.    Fractional Cents

Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan. Cash will be issued to Holders entitled to receive a Distribution of Cash in whole cents (rounded-down to the nearest whole cent when and as necessary).

## I.    Vesting Of Assets

As of the Effective Date, all property of the Debtor shall be free and clear of all Claims and Equity Interests of Holders of Claims and Holders of Equity Interests, except as otherwise specifically provided in this Plan. As of the Effective Date, all mortgages, deeds of trust, Liens or security interests in any property of the Estate will be released and all the right, title and interest of any Holder of any such mortgages, deeds of trust, Liens or security interests shall be canceled, annulled, terminated and become null and void, except as otherwise specifically provided in this Plan. The Debtor and/or the Liquidating Debtor shall be authorized to act as attorney-in-fact for any such Holder to cause all public records to properly reflect and effectuate this provision.

## J.    Corporate Action

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided under this Plan involving the corporate structure of the Debtor shall be deemed to be authorized and approved without further action by the Debtor, the Debtor's shareholders, the Debtor's board of directors, and/or the Liquidating Debtor.

## K.    No Release

Except as otherwise provided in this Plan, no Entity and/or any such Entity's parents, subsidiaries, affiliates, related Entities, officers, directors, agents and/or employees shall be released and/or discharged of any liabilities under this Plan. Consequently, except as specifically provided in this Plan, all Entities shall remain liable to the extent presently provided under any applicable law with respect to any claims of any Debtor against any such Entity.

## L.    De Minimis Payments and Distributions

Notwithstanding any other provision of this Plan, de minimis payments of less than $10 need not be made by the Liquidating Debtor on account of any Allowed Claim; provided that such de minimis payments that would otherwise be made on the Initial Distribution Date or a Subsequent Distribution Date shall carry over until the next date of a Distribution until the cumulative amount of Distributions to which the Holder of such Allowed Claim is more than $10, at which time the cumulative amount of such Distributions shall be paid to such Holder. De minimis payments that will not be distributed as of the Final Distribution Date shall be treated as undeliverable Distributions as provided in Section E above.

Notwithstanding any other provision of this Plan, if and to the extent that the Liquidating Debtor has Assets including Cash with a value of no more than $5,000 after a Distribution has been made, the Liquidating Debtor may, in lieu of making further Distributions, donate such Cash to a nonprofit organization or organizations that are exempt pursuant to section 501(c) of the Internal Revenue Code (Title 26 of the United States Code), provided that any donations made pursuant to this provision shall be made to a nonprofit organization or organizations that perform or fund community-based services.

## M.    No Distributions on Late Filed Claims

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a Proof of Claim was first filed after the applicable Bar Date shall not be an Allowed Claim, and the Liquidating Debtor shall not make any distribution to a Holder of such a Claim, *provided, however,* that to the extent such Claim was listed in the Schedules (other than as contingent, disputed, or unliquidated) and would be an Allowed Claim but for the lack of a timely proof of Claim, the Liquidating Debtor shall treat such Claim as an Allowed Claim in the amount in which it was so listed.

## N.    Withholding Taxes

Pursuant to section 346(f) of the Bankruptcy Code, the Liquidating Debtor shall be entitled to deduct any federal, state or local withholding taxes from any Cash payments made

with respect to Allowed Claims, as appropriate. The Debtor shall comply with all reporting obligations imposed on it by any governmental unit in accordance with applicable law with respect to such withholding taxes.

## ARTICLE X

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

### A.    Prosecution of Objections to Claims

Unless otherwise ordered by the Bankruptcy Court or as set forth in this Plan, the Liquidating Debtor and its professionals shall have the exclusive right to make and File objections to any Claims.

The Liquidating Debtor shall have until 90 days following the Effective Date to File objections to any Filed or scheduled Proof of Claim, *provided, however*, that the Liquidating Debtor may apply to the Bankruptcy Court for an extension of such deadline for cause.

Except as set forth in this Plan, nothing in this Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that the Debtor had immediately prior to the commencement of this Chapter 11 Case or the Effective Date, against the Holder of, or with respect to any Claim or Equity Interest. Except as set forth in this Plan, upon Confirmation the Liquidating Debtor shall have, retain, reserve and be entitled to assert all such claims, causes of action, rights of setoff and other legal or equitable defenses that the Debtor had immediately prior to the Effective Date or prior to the commencement of this Chapter 11 Case as if this Chapter 11 Case had not been commenced.

### B.    Estimation of Claims

The Liquidating Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Liquidating Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

### C.    Cumulative Remedies

All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. Until such time as a Claim becomes an Allowed Claim, such Claim shall be

treated as a Disputed Administrative Claim or Disputed Claim for purposes related to allocations, Distributions, and voting under this Plan.

## D. Payments and Distributions on Disputed Claims

On the Effective Date, the Debtor shall transfer the Creditor Fund to the Liquidating Debtor for maintenance and distribution by the Liquidating Debtor in accordance with this Plan, *provided, however*, that all payments and Distributions shall be in accordance with the terms of this Plan.

On the Distribution Dates, the Liquidating Debtor shall transfer to and maintain for each respective Reserve Fund such amounts of Cash that the Liquidating Debtor shall determine to be necessary to retain on that Distribution Date on account of the Disputed Claims for which the respective Reserve Fund is established. In determining the amount of Cash to reserve for the Reserve Funds, the Liquidating Debtor shall be entitled to rely upon the estimation, if any, of any Disputed Claims pursuant to this Plan to determine the amount of Cash so reserved, without objection by the Holder of the Disputed Claim. As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid, first, from the respective Reserve Fund corresponding to such Disputed Claim and, second, from the remaining funds, if any, in the possession of the Liquidating Debtor, until such time that the Holder of such Allowed Claim receives all payments and Distributions to which such Holder is entitled under this Plan. Notwithstanding any provision in this Plan to the contrary, no partial payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution of such disputes by settlement or Final Order. Unless otherwise agreed by the Liquidating Debtor, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a Distribution until such dispute is resolved by settlement or Final Order.

## E. Allowance of Claims and Interests

### 1. Disallowance of Claims.

All Claims held by Entities against whom the Liquidating Debtor has asserted an Avoidance Action shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject this Plan, both consequences to be in effect until such time as such causes of action against that Entity have been settled or resolved by a Final Order and all sums due the Debtor by that Entity are turned over to the Liquidating Debtor.

### 2. Allowance of Claims.

Except as expressly provided in this Plan, no Claim shall be deemed Allowed by virtue of this Plan, Confirmation, or entry of the Confirmation Order, unless and until such Claim is consensually agreed to be Allowed under the Bankruptcy Code by the Debtor, or, alternatively, the Bankruptcy Court enters a Final Order in this Chapter 11 Case allowing such Claim. For avoidance of doubt, the Debtor may compromise and/or resolve any Disputed Claims without the necessity of approval by the Bankruptcy Court.

## F. Controversies Concerning Impairment

If a controversy arises as to whether any Claim or Equity Interest, or any Class of Claims or Equity Interests, is Impaired under this Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Bankruptcy Court's interpretation of this Plan shall govern.

## ARTICLE XI

## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THIS PLAN

## A. Conditions Precedent to Confirmation

It is a condition to Confirmation that (a) the Confirmation Order shall approve in all respects all of the provisions, terms and conditions of this Plan, (b) the Confirmation Order is satisfactory in form and substance to the Debtor, and (c) to the extent insufficient Cash exists to make distributions on the Effective Date, all the Holders of Claims required to be paid on the Effective Date shall have agreed to defer payment of such Claims.

## B. Conditions Precedent to Consummation

It is a condition of Consummation that (a) the Confirmation Order shall have been signed by the Bankruptcy Court and duly entered on the docket for this Chapter 11 Case by the Clerk of the Bankruptcy Court in form and substance acceptable to the Debtor; and (b) the Confirmation Order shall be a Final Order.

The Debtor may waive any of the conditions of the Confirmation and/or Consummation of this Plan, in whole or in part, set forth in this Article XI at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to obtain Confirmation and/or achieve Consummation of this Plan.

## C. Effect of Non-Occurrence of Conditions to Consummation

If the Confirmation Order is vacated, this Plan shall be null and void in all respects, and nothing contained in this Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor; (b) prejudice in any manner the rights of the Debtor; or (c) constitute an admission, acknowledgment, offer or undertaking by the Debtor in any respects.

## ARTICLE XII

## RETENTION OF JURISDICTION

Notwithstanding entry of the Confirmation Order or Consummation having occurred, this Chapter 11 Case having been closed, or a Final Decree having been entered, the Bankruptcy Court shall have jurisdiction over matters arising out of, and related to, this Chapter 11 Case and

this Plan under, and for the purposes of, sections 105(a), 1127, 1142 and 1144 of the Bankruptcy Code and for, among other things, the following purposes:

A.      to allow, disallow, determine, liquidate, classify, estimate or establish the priority or status of any Claim, including the resolution of any request for payment of any Administrative Claim or Priority Tax Claim and the resolution of any and all objections to the allowance or priority of Claims;

B.      to grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date;

C.      to resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

D.      to ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan, including ruling on any motion or objection Filed pursuant to this Plan;

E.      to decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor or its affiliates, directors, employees, agents or Professionals that may be pending on the Effective Date;

F.      to enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with this Plan or the Disclosure Statement;

G.      to resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of this Plan, or any Entity's obligations incurred in connection with this Plan, including, among other things, any avoidance actions or subordination actions under sections 510, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code;

H.      to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of this Plan, except as otherwise provided herein;

I.      to resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in this Plan and enter such orders as may be necessary or appropriate to implement such releases, injunction and other provisions;

J.      to enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

K.     to determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with this Plan or the Disclosure Statement;

L.     to enter a Final Decree concluding this Chapter 11 Case;

M.     to consider any modification of this Plan proposed under section 1127 of the Bankruptcy Code;

N.     to protect the property of the Estate from adverse Claims or interference inconsistent with this Plan, including to hear actions to quiet or otherwise clear title to such property based upon the terms and provisions of this Plan, or to determine the Debtor's exclusive ownership of claims and Causes of Action retained or otherwise dealt with under this Plan;

O.     to hear and determine matters pertaining to abandonment of property of the Estate;

P.     to consider any modifications of this Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

Q.     to interpret, enforce and address any and all issues relating to any orders previously entered in this Chapter 11 Case to the extent such orders are not superseded or inconsistent with this Plan;

R.     to recover all Assets of the Debtor and property of the Estate, wherever located;

S.     to hear and determine matters concerning state, local, and federal taxes in accordance with sections 345, 505, and 1146 of the Bankruptcy Code.

T.     to hear and act on any other matter not inconsistent with the Bankruptcy Code; and

U.     to interpret and enforce the injunctions contained in the Confirmation Order and Plan.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

### A.     Payment of Statutory Fees

All fees payable pursuant to 28 U.S.C § 1930, as determined by the Bankruptcy Court at the hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid on or before the Effective Date. The Liquidating Debtor shall pay fees that accrue under 28 U.S.C § 1930 until a Final Decree is entered in this case, or the Bankruptcy Court otherwise orders. The Liquidating

Debtor shall submit U.S. Trustee quarterly fee status reports with each quarterly fee paid after Confirmation.

## B. Modification of Plan

The Debtor reserves to itself, in accordance with the Bankruptcy Code, the right to amend or modify this Plan prior to the entry of the Confirmation Order.

After the entry of the Confirmation Order, the Liquidating Debtor may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission, or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan, if (a) Plan has not been substantially consummated and (b) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

## C. Revocation of Plan

The Debtor reserves the right, to the extent provided under the Bankruptcy Code, to withdraw this Plan at any time before substantial consummation of this Plan.

## D. Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Entity.

## E. Reservation of Rights

Except as expressly set forth herein, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. The filing of this Plan, the statements or provisions contained therein, or the taking of any action by the Debtor with respect to this Plan shall not be, or shall not be deemed to be, an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Equity Interests prior to the Effective Date.

## F. Post-Confirmation Effectiveness of Proofs of Claims

Proofs of Claim shall, upon the Effective Date, represent only the right to participate in the Distributions contemplated by this Plan (to the extent the claims set forth in such Proofs of Claims are Allowed) and otherwise shall have no further force or effect.

## G. Term of Injunctions or Stays

Unless otherwise provided in this Plan, all injunctions or stays provided for in this Chapter 11 Case under sections 105 and 362 of the Bankruptcy Code or otherwise in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

## H.     Further Assurances

The Debtor, the Liquidating Debtor and all Holders of Claims receiving Distributions under this Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

## I.     Entire Agreement

This Plan supersedes all prior discussions, understandings, agreements, and documents pertaining or relating to any subject matter of this Plan, except for the Financing Order.

## J.     Retiree Benefits

On and after the Effective Date, the Debtor will have no employees and will not pay retiree benefits.

## K.     Failure of Bankruptcy Court to Exercise Jurisdiction

If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising out of this Chapter 11 Case, including any of the matters set forth in this Plan, this Plan shall not prohibit or limit the exercise of jurisdiction by any other court of competent jurisdiction with respect to such matter.

## L.     Notices

Any pleading, notice or other document required by this Plan to be served on or delivered to the Debtor shall be sent by first class U.S. mail, postage prepaid to:

> Counsel for the Debtor
> Laura Davis Jones, Esquire
> Curtis Hehn, Esquire
> Pachulski Stang Ziehl & Jones LLP
> 919 North Market St., 16th Floor
> Wilmington, DE  19801
>
> -and-
>
> Joshua M. Fried, Esquire
> Pachulski Stang Ziehl & Jones LLP
> 150 California Street, 15th Floor
> San Francisco, CA  94111
>
> United States Trustee
> 844 King Street, Room 2207
> Lockbox #35
> Wilmington, DE  19899-0035

## M. Filing of Additional Documents

On or before the Effective Date, the Debtor may File such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

## N. Enforceability

Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Plan.

## O. Severability

The provisions of this Plan shall not be severable unless such severance is agreed to by the Debtor, and such severance would constitute a permissible modification of this Plan pursuant to section 1127 of the Bankruptcy Code.

## P. Notice of Default under this Plan

Unless otherwise agreed, no default shall be declared under this Plan unless any payment or performance due under this Plan (other than a payment required on the Effective Date) shall not have been made or deemed made thirty (30) calendar days after written notice of the default is received by the Liquidating Debtor. Any notice of default as provided for in this Plan or in any exhibit to the Disclosure Statement shall (a) conspicuously state that it is a notice of default; (b) describe with particularity the nature of the default, including a reference to the specific provisions of this Plan as to which a default or defaults have allegedly occurred; and (c) describe any action required to cure the default, including the exact amount of any payment required to cure such default, if applicable.

## Q. Investments

The Liquidating Debtor shall be permitted from time to time to invest all or a portion of the Cash contained in any of the Reserve Funds in securities issued or directly guaranteed by the United States government or any agency thereof, commercial paper of corporations rated at least "A-1" by Standard & Poor's Corporation or rated at least "P-1" by Moody's Investor Services, Inc., interest bearing certificates of deposit, time deposits, bankers' acceptances and overnight bank deposits, and repurchase agreements.

## R. Reliance

The Liquidating Debtor, and its respective agents, employees and professionals, while acting in their capacity as such, (such actions including but not limited to, objecting to Claims, making Distributions to Creditors holding allowed Claims, and approving settlement of actions, as the case may be), shall be permitted to reasonably rely on any certificates, sworn statements, instruments, reports, claim dockets, schedules, or other documents reasonably believed to be

genuine and to have been prepared or presented by the Bankruptcy Court Clerk's Office, the Debtor, and the Debtor's professionals.

Dated:    May 12, 2009                    NETEFFECT, INC.


                                          /s/ Robert Senders
                                          By: Robert Senders
                                          Its:  Chief Financial Officer


Dated: May 12, 2009

Submitted by:                             PACHULSKI STANG ZIEHL & JONES LLP


                                          /s/  Curtis A. Hehn
                                          Laura Davis Jones (DE Bar No. 2436)
                                          Joshua M. Fried (CA Bar No. 181541)
                                          Curtis A. Hehn (DE Bar No. 4264)
                                          919 North Market Street, 17th Floor
                                          P.O. Box 8705
                                          Wilmington, DE  19899-8705 (Courier 19801)
                                          Telephone: (302) 652-4100
                                          Facsimile:  (302) 652-4400
                                          E-mail: ljones@pszyjw.com
                                                     jfried@pszjlaw.com
                                                     chehn@pszjlaw.com

                                          Counsel for the Debtor and Debtor in Possession
                                          NetEffect, Inc.

# EXHIBIT A

Service Agreement by and between NetEffect, Inc. and Corporation Service Company (CSC) for Agent Services effective April 2004.

Service Agreement by and between NetEffect, Inc. with Verizon Wireless for mobile internet access for the CFO, effective December 20, 2006.

Service Agreement by and between NetEffect, Inc. and with Fidelity Investment Services for administration of 401(k) effective December 2002.

Deposit and Banking Services Agreement by and between NetEffect, Inc. with Silicon Valley Bank effective April 2004